Argued and submitted July, remanded to Court of Appeals with instructions
September 3, 1986

In the Matter of the Compensation of
John E. Cain, Claimant.

CAIN,
*Petitioner on review,*

*v.*

WOOLLEY ENTERPRISES,
*Respondent (below),*

*and*

SAIF CORPORATION,
*Respondent on review.*

(WCB 82-10108; CA A34771; SC S32717)

724 P2d 819

James L. Edmunson, Eugene, argued the cause for petitioner on review. With him on the petition were Christopher D. Moore and Malagon & Moore, Eugene.

Darrell E. Bewley, Assistant Attorney General, Salem, argued the cause for respondent on review. With him was Dave Frohnmayer, Attorney General, Salem.

JONES, J.

## JONES, J.

Claimant seeks workers' compensation benefits for aggravation of a low back injury. The referee set aside the State Accident Insurance Fund's (SAIF) denial of claimant's aggravation claim and ordered reopening for treatment recommended by claimant's doctor. The Workers' Compensation Board (Board) reversed the referee and on reconsideration declined to remand to the referee for taking additional evidence obtained during surgery authorized that was at SAIF's expense pursuant to the referee's order. The Court of Appeals denied claimant's motion to have the court either hear the evidence or remand to the referee and affirmed the Board without opinion. We allowed review in this case and in *Compton v. Weyerhaeuser Co.,* 301 Or 641, 724 P2d 814 (1986), to interpret the workers' compensation appellate review statutes concerning what evidence the Court of Appeals should consider that may not have been obtainable at the time of the hearing before the referee. ORS 656.298(6).[1]

The facts presented to the referee and reviewed by the Board are as follows: Claimant suffered a compensable injury to his lower back in 1977 in a logging truck accident for which he received a temporary total disability award. No permanent disability was awarded. Claimant's symptoms worsened following his return to the job. A lumbar myelogram revealed a herniated disc at the L4-5 level for which doctors performed surgery in 1979. After his second return to work he again suffered increasing symptoms, causing him to quit work. Claimant underwent another lumbar myelogram in March 1981, which revealed an extradural defect at the L4-5 level on the right side for which claimant received conservative treatment. Claimant was again awarded temporary total disability and 40 percent unscheduled permanent partial disability for the low back. In May 1982, by stipulation, claimant was

---

[1] ORS 656.298(6) provides:

"The review by the Court of Appeals shall be on the entire record forwarded by the board. The court may remand the case to the referee for further evidence taking, correction or other necessary action. However, the court may hear additional evidence concerning disability that was not obtainable at the time of the hearing. The court may affirm, reverse, modify or supplement the order appealed from, and make such disposition of the case as the court determines to be appropriate."

awarded an additional 20 percent permanent partial disability for the low back.

In October 1982 claimant consulted a new doctor, Dr. Donald Smith, because claimant was experiencing continued low back and lower extremity pain. Smith recommended a CT scan and lumbar myelogram, and claimant filed an aggravation claim. Smith found increased sciatic tenderness and poorer results on the straight-leg raising test. He reported that the myelogram indicated a defect at the L4-5 level of the right side of claimant's spine consistent with a protruded disc. It was his opinion that claimant "should be offered surgical exploration and discectomy at the L4-5 level for persistent discal protrusion at L4-5 on the right, associated with sciatic nerve root compression symptoms."

In March 1983 the referee ordered the case reopened and found the aggravation claim compensable, emphasizing the "slight worsening" of claimant's condition as evidenced by new sciatic tenderness, claimant's poorer performance on a leg-raising test and the doctor's "unopposed recommendation for further surgery."

SAIF requested review by the Board, which reversed 2-to-1. The Board stated that claimant's testimony before the referee "was remarkably similar" to what claimant had said before the most recent closing of the case and that claimant's assertion that the pain was worse was "without any supporting elaboration or detail" and had "little support" from medical evidence. The majority found that the evidence of decreased straight-leg raising was not sufficiently precise to be reliable. As to the recommended surgery, the majority added:

> "We take no position on whether claimant should have surgery because the record does not reveal that authorization has been requested for surgery.
>
> "Dr. Smith merely states that claimant 'should be offered surgical exploration.' If surgery is requested and the surgery is found reasonable and necessary, then claimant may be entitled to have his claim reopened at the time he actually submits to surgery."

Board Member Lewis dissented, agreeing with the referee that the new sciatic tenderness and leg-raising test established that claimant's condition had worsened.

Claimant moved for the Board to reconsider its order and to admit five medical reports, including two from surgeries performed in April 1983 and February 1984, as "newly created evidence." Claimant urged the Board either to consider this evidence itself or to remand to the referee. On February 1, 1985, the Board declined to reconsider the evidence because it believed that it had no statutory authority to do so. It also refused to remand because the proffered evidence concerned post-hearing surgery: the earlier order had considered only "whether claimant had proven an aggravation at the time of hearing." The Board noted its earlier conclusion that claimant had not so proven, quoted its earlier comments as to the request for surgery and concluded that the reports were "properly the subject of another claim for aggravation." (The claimant's five-year deadline for filing an aggravation claim had run as of April 18, 1983.)

Claimant appealed and moved the Court of Appeals to either consider the post-hearing reports or to remand to the referee. The court denied claimant's motion and affirmed the Board without opinion.

As we said in *Compton v. Weyerhaeuser Co., supra,* any additional evidence should not be admitted at the Court of Appeals unless there is compelling reason to do so, and a compelling reason exists when the evidence (1) "concerns disability," (2) was "not obtainable at the time of hearing," and (3) it is reasonably likely to affect the outcome of the case. Unlike *Compton,* the parties in this case do not dispute that the additional evidence concerns disability and was not obtainable at the time of the hearing. The surgical reports were not discoverable or obtainable at hearing because surgery was not performed until after the referee ordered the aggravation claim accepted. The reports could not have been produced or discovered until after the initial order. The remaining consideration is whether it is reasonably likely that the evidence would affect the outcome of the case. The post-surgery reports probably are not cumulative and might contain relevant evidence not previously available to support claimant's aggravation claim. Consideration of the post-surgery evidence might well create a reasonable likelihood that the outcome of the case would be affected.

The case is remanded to the Court of Appeals for

consideration of this claim in accordance with the standard set forth in *Compton v. Weyerhaeuser Co., supra.*